Thomas MORGAN, Petitioner–Appellant,

v.

B.J. BUNNELL, Warden; Attorney General of California, Respondents–Appellees.

No. 93–55741.

United States Court of Appeals, Ninth Circuit.

Submitted May 6, 1994 *.

Decided May 13, 1994.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir. R. 34–4.

Thomas Morgan, pro se.

Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, CA, Holly D. Wilkens, Deputy Atty. Gen., San Diego, CA, for respondent.

Before: KOZINSKI and TROTT, Circuit Judges, and LEVI,** District Judge.

PER CURIAM:

Thomas Morgan was convicted for the murder of Carol May and the attempted murder of Emmerson DeVine, a couple he had met through his girlfriend, Beverly Todd. After exhausting state remedies,

** The Honorable David F. Levi, United States District Judge, Eastern District of California, sitting by designation.

Morgan filed a habeas petition in federal district court. We review the district court's denial of the petition de novo. *Brown v. Borg*, 951 F.2d 1011, 1014 (9th Cir.1991).

## I

██ Morgan argues that he was denied due process because he was shackled during trial. While criminal defendants normally are entitled to appear before the jury free of shackles, "a trial judge's decision to shackle a defendant is not per se unconstitutional." *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir.1989). We review a decision to shackle for abuse of discretion. *Id.* at 716.

██ Our cases, however, channel the exercise of that discretion. "First the court must be persuaded by compelling circumstances 'that some measure was needed to maintain the security of the courtroom.' Second, the court must 'pursue less restrictive alternatives before imposing physical restraints.'" *Jones v. Meyer*, 899 F.2d 883, 885 (9th Cir. 1990) (quoting *Spain*, 883 F.2d at 720–21) (citations omitted); *see United States v. Baker*, 10 F.3d 1374, 1401 (9th Cir.1993); *Castillo v. Stainer*, 983 F.2d 145, 147 (9th Cir.1992).

With regard to the first requirement, we recognize that a trial judge is charged with the grave responsibility of guarding the safety of courtroom personnel, parties, counsel, jury and audience and, where there is a material risk that the defendant might attempt an escape, the public at large. The judge has wide discretion to decide whether a defendant who has a propensity for violence poses a security risk and warrants increased security measures.

██ The trial judge here did not abuse his discretion because there were two legitimate reasons to believe shackling was a necessary precaution, each of which, standing alone, would be sufficient. For one, the court concluded that "under all of the circumstances," Morgan might attempt to escape. RT 10–11. While in jail, Morgan asked another inmate what courthouse security was like, how easy it would be to escape and whether the inmate could find someone Morgan could pay to arrange his escape or intimidate witnesses. RT 7. Further, the defense did not contest or deny that several witnesses against Morgan in a Michigan trial died violently before, during and after that trial. RT 6–7. The trial judge was entitled to infer that Morgan had outside resources and might be able to stage a courtroom escape. Shackling is proper where there is such a threat of escape. *See Hamilton v. Vasquez*, 882 F.2d 1469, 1471 (9th Cir.1989); *Stewart v. Corbin*, 850 F.2d 492, 497 (9th Cir.1988); *Wilson v. McCarthy*, 770 F.2d 1482, 1485 (9th Cir.1985).

Morgan also had demonstrated a propensity for violence. Before shooting May and DeVine in the back of the head, he struck them there repeatedly, causing May thirty scalp lacerations and twelve skull fractures and causing DeVine a hospital stay of six days—all in the presence of May's child who also suffered a scalp wound. SER 34. In addition, Morgan behaved obstreperously during trial on at least two occasions. SER 30. Once, he demanded to be returned to jail before the court had recessed for the day and extra security was requested. *Id.* Another time, he had to be physically restrained and forced to return to the holding facility. The trial court did not abuse its discretion in concluding that Morgan posed a security risk.

██ We next consider whether the trial court pursued less restrictive alternatives to shackling, taking into account that "(1) shackles may reverse the presumption of innocence by causing jury prejudice; (2) shackles may impair the defendant's mental faculties; (3) shackles may impede communication between the defendant and his counsel; (4) shackles may detract from the decorum of the judicial proceeding; (5) shackles may cause pain to the defendant." *Jones*, 899 F.2d at 885; *see also Castillo*, 983 F.2d at 147. The judge "must weigh the benefits and [these] burdens of shackling against other possible alternatives." *Id.* (quoting *Spain*, 883 F.2d at 721).

██ The trial court here took reasonable measures to protect Morgan's presumption of innocence and the decorum of the proceeding by ordering the removal of his handcuffs during trial. RT 10. Even though the trial

judge denied Morgan's motion to remove the leg irons in addition to the cuffs, the judge did so based on Morgan's conduct during trial. RT 37. Moreover, the judge denied the motion without prejudice, agreeing to reconsider if Morgan remained calm during the progress of the trial. *Id.* The trial judge further protected Morgan's presumption of innocence by excusing the jury from the courtroom when Morgan walked to the stand. RT 336.

The record reflects that the trial judge assessed and utilized less restrictive alternatives, and like the courts in *Castillo* and *Jones,* took adequate precautions to minimize the effects of the shackles on the jury. *Id.* Although Morgan did at one point alert the court to the pain caused by the shackles, RT 33, he failed to show that other measures were available and not implemented. *See Wilson,* 770 F.2d at 1486.

■ Morgan asserts the trial court erred because he was not allowed a hearing with sworn testimony, documentation or evidence before being shackled. However, "we have never held, and we refuse to hold now, that a trial court must conduct a hearing and make findings before ordering that a defendant be shackled." *Jones,* 899 F.2d at 886.

## II

■ Morgan presents the novel argument that the waiver of the Sixth Amendment right to confrontation involved in a guilty plea, *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), must also be made when an insanity hearing is obviated by a change in plea from not guilty by reason of insanity to not guilty. Morgan cites no authority for this argument and presents no compelling reasons to adopt it. Although utmost care is required to ensure the accused knows the consequences of his plea, *id.* at 243–44, 89 S.Ct. at 1712–13, the court discharged this obligation by advising Morgan that he was giving up his right to a jury trial as to sanity, RT 13–14.

■ Morgan also argues that, because he could have presented evidence that he wasn't capable of forming the intent to kill, the trial court violated the confrontation clause by allowing him to withdraw his insanity plea without first finding that he was sane and advising him that he was giving up a promising defense. But the court had no such duty. Since Morgan was competent to stand trial, the decision whether or not to pursue an insanity defense was a question of strategy to be decided by him and his lawyer. The court has no business second-guessing such judgments.

## III

■ Morgan claims the trial court erred in not giving voluntary manslaughter instructions. However, we can't address this claim because Morgan didn't raise it in his district court petition. *Willard v. California,* 812 F.2d 461, 465 (9th Cir.1987).

## IV

■ Finally, Morgan contends he was denied effective assistance of counsel. This claim fails unless Morgan can prove that counsel's conduct fell below an objective standard of reasonableness and prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 694–96, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1984). We will review Morgan's claims in turn, giving defense counsel's decision great deference in that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690, 104 S.Ct. at 2066.

■ Morgan claims defense counsel erred by not presenting the insanity or diminished capacity defenses. However, the facts weigh against successful invocation of these defenses. After examining Morgan, Dr. Kirzner and Dr. Faerstein declared, "At the time of the alleged offense, the defendant *had* the mental capacity to intend to kill" and was sane. SER 72. Dr. Coburn reached the same conclusion after his examination. SER 92. The only inconclusive opinion came from Dr. Chapman, who opined that "[t]he question of Diminished Capacity to form Intent must be seriously considered." SER 88. In light of these expert opinions, defense counsel reasonably declined to try these defenses.

Morgan claims his defense was damaged because Beverly Todd was not called to testify. Todd's declaration, Morgan Br. at 60–62, and the testimony Morgan claims she could offer, Morgan Br. at 19, 25, do not convince us that her testimony—even before suffering cross-examination—would have helped Morgan's defense. Counsel did not unreasonably decline to present the testimony of this witness, who wasn't present at the scene of the crime.

Finally, Morgan asserts that defense counsel should have requested a hearing on the question of shackling. Since Morgan wasn't entitled to such a hearing anyway and the trial court's decision is amply supported by the record, *see* section I *supra*, there was neither unreasonable error nor prejudice in counsel's failure to request one.

**AFFIRMED.**