106 F.3d 411
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tony Alan WILLIAMS, Petitioner-Appellant,
v.
Robert L. WRIGHT, Respondent-Appellee.
 No. 96-15186.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 21, 1997.*
Decided Jan. 23, 1997.
 
 Before: O'SCANNLAIN, LEAVY, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tony Alan Williams, a Hawaii state prisoner, appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas petition. Williams was convicted of first degree murder, possession of a firearm, and various drug crimes. We have jurisdiction pursuant to 28 U.S.C. § 2253. We review de novo, Duckett v. Godinez, 67 F.3d 734, 739 (9th Cir.1995), cert. denied, 116 S.Ct. 1549 (1996), and we affirm.
 
 I. Shackling
 
 3
 Williams contends that the trial court abused its discretion by shackling him during the trial because it failed to weigh the benefits and burdens of shackling against possible alternatives. We disagree.
 
 
 4
 We review a decision to shackle for abuse of discretion. Spain v. Rushen, 883 F.2d 712, 716-17 (9th Cir.1989). "[I]t is a denial of due process if a trial court orders a defendant shackled without first engaging in a two-step process." See Duckett, 67 F.3d at 748. First, the trial court must be persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom. See Spain, 883 F.2d at 719-20. Second, the court must pursue less restrictive alternatives before imposing physical restraints. Id. at 721. The trial judge must weigh the benefits and burdens of shackling against other possible alternatives. Morgan v. Bunnell, 24 F.3d 49, 51 (9th Cir.1994) (per curiam).
 
 
 5
 Here, the trial court shackled Williams after receiving information from the police that Williams' brother and three other men were in Honolulu for purposes of helping Williams escape. See Morgan, 24 F.3d at 51 (shackling not abuse of discretion where circumstances showed defendant intended to escape). The court also considered Williams' physical stature, the limited security in the courtroom, information regarding threats Williams made to witnesses, and the fact that Williams was charged with murdering a police officer who had testified against him. Thus, the trial court did not abuse its discretion in concluding that Williams posed a security risk. See id. Moreover, the trial court took reasonable measures to protect Williams' presumption of innocence by placing him in leg shackles covered with electrical tape, thereby ensuring that jury could not see the shackles. See id. at 52. Here, the record demonstrates that the trial court did not abuse its discretion by shackling Williams. See id. Williams fails to demonstrate that shackling him rendered his trial fundamentally unfair. See Spain, 883 F.2d at 722.
 
 II. Disclosure of Evidence
 
 6
 Williams contends that the trial court's protective order rendered his trial fundamentally unfair by delaying the disclosure of evidence. Williams additionally contends that his placement in administrative segregation during the trial rendered his trial fundamentally unfair. We disagree.
 
 
 7
 "A state court's evidentiary ruling is grounds for habeas corpus relief only if it renders the state proceeding so fundamentally unfair as to violate due process." Bueno v. Hallahan, 988 F.2d 86, 87 (9th Cir.1993) (per curiam); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) (emphasizing that federal habeas court may not reexamine state court determinations on state law questions).
 
 
 8
 At Williams' trial, the court issued a protective order and placed him in administrative segregation after considering evidence that Williams had threatened witnesses and the facts surrounding his first degree murder charge. See Haw.R.Pen.P. 16(e)(4). The protective order was limited to evidence concerning Officer Barboza's murder and did not prevent the full discovery of evidence pertaining to the firearm and drug charges. The trial court subsequently modified its protective order by permitting Williams' counsel to obtain witness statements and police reports regarding the murder charge prior to counsel's opening statement. In addition, the trial court minimized any potential harm by giving Williams' attorney the opportunity to request a recess after each witness testified and by allowing counsel an evening to prepare his cross-examination. Accordingly, Williams fails to show that the delayed disclosure of evidence rendered his trial fundamentally unfair. See Bueno, 988 F.2d at 87.
 
 
 9
 Williams additionally contends that his placement in administrative segregation rendered his trial fundamentally unfair because he was prevented from examining McAllister's written statement for inconsistencies. However, inasmuch as Williams' counsel had access to all of McAllister's witness statements, Williams fails to demonstrate that his placement in administrative segregation rendered his trial fundamentally unfair. See id.
 
 III. Prior Bad Acts Evidence
 
 10
 Williams contends that the trial court deprived him of a fair trial by allowing the jury to hear evidence of Williams' prior bad acts. We disagree.
 
 
 11
 "[A] federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995).
 
 
 12
 At trial, the prosecution submitted evidence of past drug transactions between Williams and witnesses Handa, Gabalis, and Binder in order to demonstrate modus operandi, motive, intent, preparation, and plan. See Haw.R.Evid. § 404(b). The evidence was also relevant to rebut Williams' entrapment defense. See Haw.Rev.Stat. § 702-237. Here, the evidence was not only admitted for permissible purposes, but the trial evidence pertaining to the drug charges was strong. See Jammal v. Van de Kamp, 926 F.2d 918, 920-21 (9th Cir.1991) (habeas petition rejected where jury could draw permissible inference from evidence and such evidence was not highly inflammatory). Accordingly, Williams fails to demonstrate that this evidence rendered his trial fundamentally unfair. See Walters, 45 F.3d at 1357-58.
 
 
 13
 Williams additionally contends that Michael Binder's testimony concerning prior bad acts was highly prejudicial and caused the jury to convict him of murdering officer Barboza. We disagree.
 
 
 14
 At trial, Binder testified that Williams told him that "he had left 13 bodies behind." Binder's testimony, however, was not elicited by the state but was spontaneously uttered during the state's direct examination. Inasmuch as the trial court was not asked to make an evidentiary ruling, Williams cannot show that his trial was rendered fundamentally unfair based upon an arbitrary evidentiary ruling. See id. We additionally reject Williams' claim that Kelly Sur's testimony rendered his trial fundamentally unfair. Although Sur spontaneously testified that Williams told him that "[Williams] confronted a guy and shot the guy in the leg," such evidence, upon counsel's objection, was stricken from the record and the jury instructed to disregard the evidence. See id.
 
 IV. Prosecutor's Closing Argument
 
 15
 Williams contends that the prosecutor's comment on Williams' failure to testify violated his Fifth Amendment rights. We disagree.
 
 
 16
 "The Fifth Amendment prohibits the prosecutor from commenting on a defendant's decision not to testify." Griffin v. California, 380 U.S. 609, 615 (1965). "While it is proper for the prosecution to address the defense's arguments, comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987). Courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions. See id.
 
 
 17
 At trial, following defense counsel's closing statement that "[Williams] [was] cloaked with the presumption of innocence," the prosecutor argued in his rebuttal that:
 
 
 18
 "[h]e talks to you of the presumption of innocence of this man. That's true to this extent. Throughout this trial, he's had that presumption of innocence. He's had [ ] the benefit of counsel; he's had the right to confront, to look at every witness ... He's had the opportunity to testify, the opportunity to call witnesses if he chose to do so."
 
 
 19
 The trial court included a standard jury instruction cautioning jurors not to draw inferences from Williams' failure to testify. Viewing the prosecutor's single, isolated statement in context, and considering the trial court's curative instruction, the prosecutor's rebuttal argument was not impermissible. See Lincoln, 805 F.2d at 807; Griffin, 380 U.S. at 615.[1]
 
 V. Ineffective Assistance of Counsel
 
 20
 Williams contends that his trial counsel was ineffective for failing to: (1) conduct an adequate voir dire; (2) prevent the jury from hearing that Williams failed to make bail; (3) make an opening statement which stated facts expected to be adduced at trial; (4) investigate facts to support a defense; (5) request a mistrial based on Griffin error; (6) request a mistrial based on the admission of prior bad acts evidence; (7) cross-examine witnesses Handa, McAllister, Binder, and Iokia; (8) inform him of the contents of discovery which dealt with allegedly impeachable information. Williams additionally contends that counsel was ineffective for (9) advising Williams not to testify. We disagree.
 
 
 21
 To prevail on a claim of ineffective assistance, a petitioner must show both that his counsel's performance was deficient and that this prejudiced his case. Strickland v. Washington, 466 U.S. 668, 688 (1984). We may dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, without examining the performance prong. id. at 697. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " id. at 689 (citation omitted).
 
 
 22
 Here, with respect to claims one through six, Williams fails to demonstrate that counsel's actions prejudiced his case. Accordingly, we reject claims one through six without examining the prejudice prong. See id. at 697.
 
 
 23
 Williams contends that counsel was ineffective for failing to cross-examine witnesses Handa, McAllister, Binder, and Iokia. Williams additionally contends that counsel was ineffective for failing to discuss discovery with him as it became available, especially impeachment evidence concerning witness McAllister. We disagree.
 
 
 24
 At trial, the prosecution presented substantial evidence of William's guilt. Binder testified that after helping Williams locate and purchase a sawed-off shotgun, Williams told him that he planned to kill someone because "he'd been screwed over in a drug deal." Binder additionally testified that on October 20, 1987, Williams stated that they would be "reading about it in the papers the next day or the day after." Officer Barboza died from shotgun wounds on October 22, 1987. McAllister testified that Williams admitted to murdering officer Barboza and gave an extensive account of what Williams told him regarding the planning and carrying out of the murder. Furthermore, the Hawaii Supreme Court found that Handa's testimony, as well as the videotape submitted at trial, demonstrated that Williams bragged about officer Barboza's murder and acknowledged that he disposed of the murder weapon by throwing it into the water. See State v. Williams, No. 13309; see also Palmer v. Estelle, 985 F.2d 456, 458 (9th Cir.1993) (state court's factual findings presumed correct).
 
 
 25
 Here, Williams could have faced more damaging redirect testimony had counsel chosen to cross-examine these witnesses. Additionally, had Williams testified he would have been subject to relentless cross-examination. Because Williams fails to demonstrate that counsel's failure to cross-examine Handa, McAllister, Binder, and Iokia was not sound trial strategy, we reject Williams' ineffective assistance claim. See Strickland, 466 U.S. at 689. Additionally, because the case against Williams was strong, Williams cannot show that he was prejudiced by counsel's failure to disclose the allegedly impeachable information regarding witness McAllister. See Strickland, 466 U.S. at 697. Moreover, Williams has not shown prejudice due to counsel advising him not to testify at trial. id.
 
 
 26
 Because Williams' allegations, if proved, would not entitle him to relief, the district court did not err by failing to hold an evidentiary hearing on Wilson's ineffective assistance claims. See Williams v. Calderon, 52 F.3d 1465, 1484 (9th Cir.1995), cert. denied, 116 S.Ct. 937 (1996).
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because Williams has failed to demonstrate any error, much less constitutional error, we reject his claim that the cumulative effect of the trial court's error denied Williams of a fair trial