Lewis E. LARSON, Jr., Petitioner,

v.

Joan PALMATEER, Respondent.

No. Civ. 00–1507–MO.

United States District Court,
D. Oregon.

May 11, 2004.

Steven T. Wax, Federal Public Defender, Wendy R. Willis, Dennis N. Balske, Federal Public Defender, Portland, OR, for Petitioner.

Lynn David Larsen, Department of Justice Administration, Salem, OR, for Respondent.

## OPINION AND ORDER

MOSMAN, District Judge.

On 16 October 2003, Magistrate Judge Jelderks issued findings and recommendation in the above captioned case recommending the denial of petitioner's writ of habeas corpus (Doc. # 71).

Petitioner has filed objections to Judge Jelderks findings and recommendation (Doc. # 79). When a party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district judge must make a *de novo* determination of that portion of the magistrate's report. 28 U.S.C. § 636(b)(1).

After *de novo* review, this court adopts the findings and recommendation of the magistrate as the opinion of this court. In the opinion that follows, I write to give additional support to the magistrate's conclusion that petitioner's trial was untainted by the fact that he was made to wear a leg brace for a portion of his trial. This court finds that the trial court was presented with security concerns which necessitated the use of physical restraints.

## BACKGROUND

Petitioner claims that he was denied a fair trial because he was forced to wear a security device on his leg for a portion of the trial proceedings. Petitioner claims that the leg brace violated his rights under clearly established federal law, particularly *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), which concerns shackling of prisoners at trial, and represents the principle that shackling carries a high risk of prejudice that must be avoided in the absence of compelling security risks.

At trial, petitioner wore a leg brace for the first two of his nine days at trial. Petitioner initially thought he would be shackled in chains during trial, to which the trial court responded: "No, it's not the shackles, it's a brace that's up around your knee. It covers the calf and the thigh ... it's not the leg irons. No leg chains." Trial Transcript at 499. The judge advised petitioner that the security brace would be worn underneath his clothes and would not be visible to the jury.

Petitioner contends that, contrary to the trial judge's description, the leg brace was placed on the outside of his pants and plainly visible for the first two days of trial because it would not fit under his clothing. After the second day of trial, the judge ordered the leg brace removed. At the beginning of the third day of trial, the judge gave the following explanation to the jury:

> Good Morning. [Petitioner] was wearing a leg brace, and that leg brace was strictly a security device. It's a kind of leg iron that they use to transport prisoners, basically during airline flights, that sort of thing. A decision has been made to take it off him. He has a physical impairment,[1] so that's the reason for the absence of the leg brace. You saw it, now you don't see it. That's why.

Trial Tr. at 646.

It seems clear that this explanation was well intentioned, suggesting to the jury that the physical restraint was simply a matter of travel protocol, but the phrasing seems to have gone awry in delivery, particularly with the regrettable inclusion of

---

1. Petitioner notes in his brief that had no such physical impairment.

the words "leg iron." Regardless, the remark makes it clear that the jury saw the leg brace from the jury box – a crucial fact which requires this court to scrutinize the use the physical restraint in question.

## STANDARD

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in the state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A state court's findings of facts are presumed to be correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

██ The decision to use physical restraints at trial must be supported by compelling circumstances which require the use of physical restraint to maintain the security of the courtroom; a "trial court judge's decision to shackle a defendant is not per se unconstitutional." *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir.1989). The trial court's decision to use physical restraints is reviewed for abuse of discretion. *Id.* The exercise of the trial court's discretion is limited by two factors:

First, the court must be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom. Second, the court must pursue less restrictive alternatives.... With regard to the first requirement, we recognize a trial judge is charged with the grave responsibility of guarding the safety of the courtroom personnel, parties, counsel, jury and audience, and, where there is material risk

that the defendant may escape, the public at large. The judge has wide discretion to decide whether a defendant who has a propensity for violence poses a security risk and warrants increased security measures.

*Morgan v. Bunnell*, 24 F.3d 49, 51 (9th Cir.1994) (quoting *Jones v. Meyer*, 899 F.2d 883, 885 (9th Cir.1990)).

██ Thus, the use of physical restraints at trial is governed by two factors: 1) the presence of compelling security concerns; and 2) the need to use the least restrictive alternative.

██ Although the trial court judge made no formalized finding in this case, the record is clear that the court faced a variety of security concerns. First, there is evidence that the courthouse security faced a staffing shortage. At a pretrial conference that judge explained the need for physical restraints to the petitioner as follows: "Well, you're not being punished. They [security] are understaffed. There is only one deputy, and of course, he's outside. That's the reason for it." Trial Tr. 98. The Ninth Circuit has stated that unavailability of security personnel is a legitimate factor for a trial court judge to consider in imposing physical restraints. See *Hancock v. Maass*, 887 F.2d 1089 (9th Cir.1989) (shackling of defendant was proper where bailiff was elderly and frail, the courtroom had three doors available for exit, and the sheriff had a very limited number of deputies available). Second, petitioner had previously demonstrated a proclivity for absconding, escaping from the police during the initial traffic stop that led to his arrest, and again just prior to his arrest in this case. Third, in the course of conducting his own defense, petitioner called several prisoners, including former cellmates, as witnesses. Some of these witnesses had violent criminal histo-

ries, which included previous escape attempts. The cross-examination of defendant's witness Brett Pruett is illustrative:

Q: You also have an escape and a theft by receiving out of Santa Clara, California back in 1984?

A: Uh-huh.

Q: Also a burglary out of Las Vegas, Nevada in 1985, is that right?

A: Yes.

Q: And you also have a felony assault in the first degree and assault in the second degree out of Coquille, Oregon, is that right?

A: Yes.

Q: Didn't you just try to escape again from here over the weekend?

A: So they say.

Trial Tr. 1094.

Fourth, the trial judge was entitled to consider the nature of the charge—essentially a retaliation murder against family members who provided information to police of his whereabouts—in assessing the security risk of this case.

In light of the staffing shortages, petitioner's criminal background and history of escaping custody, and the violent criminals defendant brought to testify at trial– one of whom attempted a jailbreak en route to testifying – and the nature of the charge, this court finds that the trial court was within its discretion in ordering the use of a leg brace.

Regarding the second factor under *Morgan*, it is clear from the record that the trial court judge took pains use the least restrictive means possible to minimize any prejudice, opting to use the less intrusive leg brace rather than shackles, removing the leg brace when he felt it was no longer needed. Similarly, to avoid the prejudice associated with prisoner's clothing, the judge made sure that street clothes were provided to the petitioner when it became apparent that he had none of his own. Trial Tr. 498.

## CONCLUSION

Because the trial court judge was faced with serious security concerns, the use of physical restraints in the defendant's trial was warranted. Furthermore, it is clear from the record that the judge took care in pursuing the least restrictive alternatives, opting for a leg brace rather than shackles, ensuring that any prejudice was minimized. Because this court finds that the trial court judge was within his discretion in requiring the leg brace, there is no need to embark harmless error analysis. Indeed, we find that use of the leg brace was not erroneous in the first place. Therefore, the use of the leg brace in petitioner's trial was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Accordingly, petitioner's writ of habeas corpus is DENIED, and this proceeding is dismissed.

IT IS SO ORDERED.