FILED

10/05/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0249

DA 20-0249

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 259N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MAKUEEYAPEE WHITFORD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DC 19-14
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

            Kathryn McEnery, Powell County Attorney, Patrick J. Moody, Deputy
County Attorney, Deer Lodge, Montana

Submitted on Briefs:  September 8, 2021

Decided:  October 5, 2021

Filed:

_____
                        Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Makueeyapee Whitford appeals the March 16, 2020 Judgment of the Third Judicial District Court, Powell County. A jury convicted Whitford of two counts of assault with bodily fluid, both misdemeanors, in violation of § 45-5-214, MCA. The convictions arose from Whitford spitting on two detention officers while he was transferred from his cell to the shower in a locked unit at the Montana State Prison. On appeal, Whitford argues his right to a fair trial was violated and the presumption of innocence undermined when the court ordered him to wear leg irons while two officers sat within arms-length of him and a third armed officer sat in the courtroom during the trial.

¶3      At the hearing on January 21, 2020, originally scheduled as a pretrial conference, the prosecutor informed the District Court Whitford would not attend the hearing as he had refused to leave his cell that morning and officers had sprayed him with OC spray in an attempt to get him out of his cell. The parties confirmed the case was going to trial, the number of jurors needed, and any additional issues would be resolved at a pretrial conference the morning of trial. At the end of the short hearing, counsel for Whitford asked whether his client would be handcuffed for trial. The judge stated after hearing Whitford

2

had to be pepper sprayed that morning, "the best-case scenario" would be leg irons with a skirted table and to only move Whitford when the jury was not in the room to "draw[] the least amount of attention to the security as possible." Whitford's counsel did not raise any objections.

¶4      On the morning of the jury trial on February 3, 2020, the court held an in-chambers meeting to discuss courtroom security. Whitford was not present. A correctional officer told the court the prison would have three officers in the courtroom and two of the officers would sit behind Whitford within arms-length. Whitford's counsel stated he normally does not like to have officers right behind his client, but he did not raise an objection. The court explained it was "standard operating procedure [to] have officers within virtual arms reach with everybody from the prison." The court inquired whether Whitford had done anything recently to raise security concerns. The officer stated Whitford frequently charges at officers unexpectedly and Whitford had charged at officers less than five days ago and was put in a restraint chair and spit hood at that time. The officer also told the court Whitford had destroyed a visiting cell within the last three months. The officer opined Whitford could be a problem in the courtroom and recommended Whitford wear a belly-chain to the trial for security. Whitford's counsel objected, arguing wearing a belly-chain in front of the jury would be prejudicial to his client. After listening to the objection, the court stated Whitford would be in a belly-chain and handcuffs during trial, explaining "this has been established to my satisfaction that this is uh, an extraordinary individual and an

3

extraordinary situation uh, at least not ordinary. . . . I don't want an officer hurt. . . . [H]e's acted up enough to where with an audience who knows what he's going to do?"

¶5 In the courtroom for the pretrial conference, Whitford repeatedly assured the court he would not act up during trial. After listening to Whitford, the court decided Whitford would have to wear leg irons during the trial, but not a belly-chain or handcuffs. Whitford responded "That's understandable." At the end of the pretrial conference, the court stated it would start off with leg irons only and see how it goes and he would allow the prison to have the three officers it requested in the courtroom. Whitford and his counsel both thanked the judge.

¶6 We review a district court's decision to restrain a criminal defendant during trial for an abuse of discretion. *State v. Rickett*, 2016 MT 168, ¶ 6, 384 Mont. 114, 375 P.3d 368.

¶7 Whitford maintains on appeal his right to a fair trial was violated because the District Court failed to determine compelling circumstances demonstrated additional security measures were needed and to pursue less restrictive alternatives before imposing physical restraints. Whitford argues the use of leg irons, in addition to the three officers present in the courtroom, undermined the presumption of innocence and resulted in a violation of his due process rights.

¶8 The Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 17, of the Montana Constitution guarantee a defendant's right to a fair trial. The right to a fair trial includes the right to appear before a jury free of shackles and other physical restraints absent a determination from the trial court restraints are justified

4

to maintain courtroom security. *State v. Herrick*, 2004 MT 323, ¶¶ 12-15, 324 Mont. 76, 101 P.3d 755; *see also Deck v. Missouri*, 544 U.S. 622, 629, 125 S. Ct. 2007, 2012 (2005). Unlike visible restraints, "the presence of armed officers in the courtroom is not inherently prejudicial." *Kills on Top v. State*, 273 Mont. 32, 57, 901 P.2d 1368, 1384 (1995); *see also Holbrook v. Flynn*, 475 U.S. 560, 568-69, 106 S. Ct. 1340, 1345-46 (1986). Thus, any question of prejudice due to the presence of officers in the courtroom must be considered on a case-by-case basis. *Kills on Top*, 273 Mont. at 57, 901 P.2d at 1384 (citing *Holbrook*, 475 U.S. at 569, 106 S. Ct. at 1346).

¶9 This Court adopted a two-part test in *Herrick* for determining whether a trial court abused its discretion in restraining a criminal defendant during trial. *Herrick*, ¶ 15. First the trial court "must be persuaded by compelling circumstances that some measure is needed to maintain the security of the courtroom." *Herrick*, ¶ 14. The "trial court 'has wide discretion to decide whether a defendant who has a propensity for violence poses a security risk and warrants increased security measures.'" *Herrick*, ¶ 15 (quoting *Morgan v. Bunnell*, 24 F.3d 49, 51 (9th Cir. 1994)). Second, the court "must pursue less restrictive alternatives before imposing physical restraints." *Herrick*, ¶ 14. A trial court's decision to restrain a defendant without first engaging in the two-step analysis constitutes an abuse of discretion. *Rickett*, ¶ 8. An error in ordering "[s]hackling, except in extreme forms, is susceptible to harmless error analysis." *State v. Hartsoe*, 2011 MT 188, ¶ 30, 361 Mont. 305, 258 P.3d 428 (quoting *Duckett v. Godinez*, 67 F.3d 734, 749 (9th Cir. 1995) (alteration in original)).

5

¶10 Generally, this Court will not consider issues raised for the first time on appeal as it is fundamentally unfair to fault a lower court for failing to correctly rule on an issue it was never given the opportunity to consider. *State v. Whalen*, 2013 MT 26, ¶ 37, 368 Mont. 354, 295 P.3d 1055. Plain error review is an exception to this general rule. *State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142. We invoke plain error review sparingly, on a case-by-case basis, considering the totality of the circumstances. *Akers*, ¶ 13. When a criminal defendant's fundamental rights are invoked, we may choose to review a claim under the plain error doctrine when failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the proceedings, or may compromise the integrity of the judicial process. *Akers*, ¶¶ 10, 13.

¶11 Whitford's counsel objected to the use of a belly-chain and handcuffs, which the District Court ultimately did not order Whitford to wear. Whitford did not object to the use of leg irons or the presence of the three officers in the courtroom. Whitford has not demonstrated the use of leg irons and the stationing of two officers within arms-length and a third armed officer present in the courtroom during trial prejudiced him in any way and certainly has failed to cast doubt on the fundamental fairness of the proceedings or the integrity of the judicial process. The leg irons were not visible to the jury and measures were taken to prevent the jury from seeing the leg irons, including placing Whitford on the stand while the jury was outside the courtroom. Additionally, as Whitford admitted to the jury he was an inmate at Montana State Prison, the jury was likely to infer the officers'

presence was due to Whitford's custodial status and not because he was culpable for the charged offenses. Whitford has failed to establish plain error review is warranted. We affirm Whitford's conviction.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶13 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE