No. 03-562

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 323

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

JASON EVANS HERRICK,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 02–395(c)
Honorable Kenneth R. Neill, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

          Brant Light, Cascade County Attorney; Gina Bishop,
Deputy County Attorney, Great Falls, Montana


            Submitted on Briefs:  July 6, 2004

                 Decided:   November 16, 2004


Filed:

                                                
                                     Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     A jury in the Eighth Judicial District Court, Cascade County, found Jason Herrick guilty of attempted deliberate homicide and carrying a concealed weapon. Herrick appeals and we affirm.

¶2     The issues are:

¶3     1. Did the District Court abuse its discretion in violation of Herrick's right to due process of law in granting the State of Montana's request to restrain him with leg irons during trial?

¶4     2. Did the shackling of Herrick during trial violate his right to a fair trial or individual dignity under the Montana Constitution?

BACKGROUND

¶5     On Friday, September 6, 2002, City of Great Falls police detectives were attempting to locate three young men in connection with a burglary and theft of guns. Just before noon, three detectives stopped three young men--including Herrick--who were walking across a city street and looking nervously at the detectives' police vehicles.

¶6     Detective Bruce McDermott approached Herrick, identified himself as a police officer, and asked Herrick for his name and some identification. After a brief verbal exchange, Herrick reached into the waistband of his trousers and withdrew a Colt .45 automatic pistol. He immediately racked the slide, shoved the loaded gun into McDermott's abdomen and pulled the trigger. The gun misfired and failed to discharge. The detectives

2

wrestled the weapon away from Herrick, arrested him and took him to the police station. The State of Montana subsequently charged Herrick with attempted deliberate homicide and carrying a concealed weapon.

¶7 The State moved for additional security at Herrick's jury trial based on the nature of the charges and Herrick's conduct while he was in custody between his arrest and the trial date. The State's specific requests were (1) to secure Herrick in leg irons and handcuffs with the leg irons remaining on him throughout trial; (2) to remove Herrick from the courtroom and place him in a holding cell during all breaks in the trial; (3) to conduct patdown searches of Herrick for weapons each time he entered the courtroom; (4) to prohibit contact between Herrick and his friends or family while at the courthouse; (5) to station a deputy or detention officer behind or in close proximity to Herrick at counsel table; and (6) to have a deputy or detention officer in close proximity to the witness stand if Herrick elected to testify.

¶8 Herrick did not dispute the factual bases of the State's motion, but objected to the additional security. Conceding that leg restraints were within the District Court's discretion if the court found he posed a legitimate risk to escape or presented a danger to others in court, Herrick argued that granting the remaining requests would violate his constitutional rights to counsel and to a fair and impartial jury. He also asserted that granting any of the requests would violate the "dignity clause" of the Montana Constitution.

¶9 The District Court held a hearing on the State's motion for additional security immediately before *voir dire* of the jury panel. The court asked counsel if they had anything to add to their briefs, and both counsel declined to make any additional record. The court

3

noted the defense did not dispute the facts asserted by the State in support of its motion. The court allowed the use of leg irons during trial, reasoning they were not likely to be seen by the jury while Herrick was seated. It ordered, however, that Herrick could be moved from the courtroom only as necessary for him and only when the jury was not present. The court also ordered that all searches of Herrick for weapons must be conducted outside the jury's view.

¶10     At the end of trial, the jury found Herrick guilty. The District Court entered judgment of conviction and sentence, and Herrick appeals.

## ISSUE 1

¶11     Did the District Court abuse its discretion in violation of Herrick's right to due process of law in granting the State's request to restrain him with leg irons during trial?

¶12     The Due Process Clause of the United States Constitution entitles a criminal defendant to appear before a jury free of shackles and other physical restraints. That right is not absolute, however, and a trial judge's decision to shackle a defendant is not unconstitutional *per se. Morgan v. Bunnell* (9th Cir. 1994), 24 F.3d 49, 51 (citation omitted).

¶13     We have not previously articulated a distinction between the protections afforded under the due process clauses of the United States Constitution and the Montana Constitution in this regard. Our cases on shackles or restraints--which have arisen in the context of whether motions for mistrial should have been made and granted based on prejudice when juries briefly saw defendants in restraints--recognize that a defendant is ordinarily entitled

4

to be relieved of handcuffs or other restraints at trial. *See State v. Herrman*, 2003 MT 149,

¶ 38, 316 Mont. 198, ¶ 38, 70 P.3d 738, ¶ 38; *Porter v. State*, 2002 MT 319, ¶¶ 28-29, 313

Mont. 149, ¶¶ 28-29, 60 P.3d 951, ¶¶ 28-29; *State v. Pendergrass* (1980), 189 Mont. 127,

133-34, 615 P.2d 201, 205; and *State v. Baugh* (1977), 174 Mont. 456, 462, 571 P.2d 779,

782.  The cases do not, however, set forth a standard under which this Court will review a

trial court's decision granting a motion to restrain a defendant.

¶14    In *Morgan*, 24 F.3d at 51, the Ninth Circuit Court of Appeals used an abuse of

discretion standard in reviewing the due process implications of a trial court's decision to

restrain a defendant.  In the present case, both parties agree that the proper standard of

review is abuse of discretion.  Herrick also requests that we adopt the Ninth Circuit's two-

step analysis for determining whether a district court abused its discretion in shackling a

defendant.  Under that test, the court must be persuaded by compelling circumstances that

some measure is needed to maintain the security of the courtroom, and must pursue less

restrictive alternatives before imposing physical restraints. *Morgan,* 24 F.3d at 51 (citations

omitted).

¶15    We conclude that the Ninth Circuit Court's two-part test for determining whether a

trial court has abused its discretion in restraining a criminal defendant at trial, as set forth

above, is the appropriate analysis.  Therefore, we adopt that test, as well as the Ninth

Circuit's additional language relating to the first part of the test, namely, that a trial court "has

5

wide discretion to decide whether a defendant who has a propensity for violence poses a security risk and warrants increased security measures." *Morgan*, 24 F.3d at 51. Consequently, we conclude the due process clause in Article II, Section 17 of the Montana Constitution does not provide more protection with regard to shackling than the United States Constitution.

¶16 The seminal case on shackling a criminal defendant during trial is *Illinois v. Allen* (1970), 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. There, defendant Allen repeatedly and abusively argued with the federal trial court and his standby counsel during his jury trial. The trial court eventually removed Allen from the courtroom for part of the trial and allowed his standby counsel to take over the defense until Allen agreed to conduct himself properly. After he was convicted, Allen petitioned for a writ of habeas corpus. The federal district court denied the writ but, on appeal, the Seventh Circuit Court of Appeals granted it, concluding a defendant's right to be present at his own trial under the Confrontation Clause of the Sixth Amendment is so absolute that no matter how unruly or disruptive the defendant's conduct might be, he could never lose that right. *See Allen*, 397 U.S. at 339-42, 90 S.Ct. at 1058-60, 25 L.Ed.2d at 356-58.

¶17 The United States Supreme Court reversed, holding the trial court acted within its discretion and that a defendant can lose his right to be present at trial if, after warnings by the judge, he continues to be so disorderly, disruptive and disrespectful of the court that the

trial cannot be carried on with him in the courtroom. *Allen*, 397 U.S. at 343, 90 S.Ct. at 1060-61, 25 L.Ed.2d at 359. The Supreme Court then held there are at least three permissible ways for a trial judge to handle an obstreperous defendant: (1) bind and gag him, thereby keeping him present in the courtroom; (2) cite him for contempt; and (3) take him out of the courtroom until he promises to conduct himself properly. It stated:

> [E]ven to contemplate such a technique [as binding and gagging a defendant during trial], much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint. It is in part because of these inherent disadvantages and limitations in this method of dealing with disorderly defendants that we decline to hold with the Court of Appeals that a defendant cannot under any possible circumstances be deprived of his right to be present at trial.

*Allen*, 397 U.S. at 344, 90 S.Ct. at 1061, 25 L.Ed.2d at 359. The Supreme Court then observed that "in some situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here." *Allen*, 397 U.S. at 344, 90 S.Ct. at 1061, 25 L.Ed.2d at 359.

¶18 Herrick cites federal cases subsequent to *Allen* which focus on the effect of shackling --or binding and gagging a defendant--on the presumption of innocence. He points out that shackling, when observed by the jury, is inherently prejudicial because it serves as an

7

indication of a need to separate the defendant from the community at large. *See Holbrook v. Flynn* (1986), 475 U.S. 560, 569, 106 S.Ct. 1340, 1346, 89 L.Ed.2d 525, 534; *see also United States v. Durham* (11th Cir. 2002), 287 F.3d 1297, 1304 (presence of shackles and other physical restraints on the defendant tend to erode the presumption of innocence); *Duckett v. Godinez* (9th Cir. 1995), 67 F.3d 734, 748 (physical restraints may create the impression in the minds of the jury that the court believes the defendant is a particularly dangerous and violent person).

¶19    Unlike the cases on which Herrick relies, the present case presents no indication of any impact on the presumption of innocence as a result of the shackling of Herrick's ankles. By limiting the State to the use of leg irons only, not allowing Herrick to be moved from the defense table in the jury's presence and instructing the State to take "extraordinary care to be sure that [Herrick is] not seen in any restraints by members of the jury or the jury panel," the District Court made every reasonable effort to assure that the restraints were not visible to the jury. Nothing of record shows or even suggests any failure of court security officers to comply with the court's directions or that jurors or potential jurors saw the shackles. Moreover, Herrick does not claim the restraints interfered with his participation in his own defense or influenced his decision not to testify.

¶20    The question remains whether the District Court's decision to allow the State to shackle Herrick at trial comports with the two-part analysis we adopted above. Under the

8

first step in the analysis, the trial court must be persuaded by compelling circumstances that some measure is needed to maintain the security of the courtroom. In this regard, Herrick claims the District Court did not scrutinize evidence of any disruptive courtroom behavior, attempts to escape from custody, assaults or attempted assaults while in custody or a pattern of defiant behavior toward corrections officials and judicial authorities.

¶21 The State's reasons for requesting additional security clearly indicate Herrick engaged in a pattern of defiant behavior toward correctional officials and authorities involved in the administration of justice. In addition to the violent nature of the charges against him, the State's motion was based on two separate charges against Herrick of possession of a deadly weapon by a prisoner since his arrest; letters Herrick sent to the United States District Attorney for Montana and the Cascade County Attorney stating a white powdery substance contained therein was anthrax and a subsequent letter from him threatening the lives of the President of the United States and the Cascade County Attorney; and a charge of felony intimidation--for communicating a telephone bomb threat to a local attorney--against Herrick since his arrest. On these factual bases, undisputed by Herrick, the State believed Herrick presented a danger to all court personnel. The District Court incorporated many of these undisputed facts as findings of fact in its order granting, in part, the motion for additional security. The court made a final written finding that "[a]ll of the foregoing indicates a propensity of the Defendant for violence and that he presents a danger to court personnel."

9

¶22     Having failed to timely dispute the factual allegations contained in the State's motion, Herrick cannot do so now. *See, e.g., State v. Schaff*, 1998 MT 104, ¶ 26, 288 Mont. 421, ¶ 26, 958 P.2d 682, ¶ 26 (citations omitted). We conclude that these facts present sufficient compelling circumstances to support the District Court's exercise of its broad discretion in determining that "some measure was needed to maintain the security of the courtroom." *See Morgan*, 24 F.3d at 51.

¶23     The second step in the analysis requires the trial court to pursue less restrictive alternatives before implementing physical restraints. Here, the shackling of Herrick's ankles was a significantly less restrictive alternative than the other methods requested in the State's motion for additional security. The District Court denied the State's requests to restrain Herrick with handcuffs and to move him in shackles from counsel table in the jury's presence or at all, except when necessary for his benefit. We conclude the District Court satisfied the second step in the analysis.

¶24     The District Court satisfied both parts of the two-part abuse of discretion analysis for reviewing a trial court's decision to restrain a defendant. We conclude the District Court did not abuse its discretion in violation of the due process clauses of the United States and Montana Constitutions when it granted the State's request to shackle Herrick at trial.

ISSUE 2

¶25     Did the shackling of Herrick during trial violate his right to a fair trial or individual dignity under the Montana Constitution?

10

¶26 Herrick argues that placing him in shackles during trial violated his rights to a fair trial and individual dignity under the Montana Constitution. In these regards, he claims elevated rights as compared with his rights under the United States Constitution.

¶27 Herrick's brief to the District Court in opposition to the State's motion for additional security mentions his right to "fair jury" under both the United States and Montana Constitutions, but does not even give a specific citation, much less any analysis on the right to "fair jury." As recited above, when the court offered to hear oral argument on the motion, Herrick's counsel told the court he would rely on his brief.

¶28 As a general rule, we do not consider new legal theories and issues not raised before the trial court. However, there are exceptions to that general rule, typically in criminal cases when constitutional or substantial rights are at issue. *State v. Whitehorn*, 2002 MT 54, ¶ 15, 309 Mont. 63, ¶ 15, 50 P.3d 121, ¶ 15 (citations omitted). Because this is such a case, we will discuss Herrick's fair trial claim.

¶29 On appeal, Herrick requests that we follow *State v. Finch* (Wash. 1999), 975 P.2d 967, in connection with the right to a fair trial. *Finch* was a capital case in which the defendant was charged with two counts of aggravated first-degree murder. The defendant was brought into the courtroom in shackles in the presence of the jury panel and was handcuffed to his chair during the testimony of two of the witnesses. *Finch*, 975 P.2d at 1002. The court commented--on the record and in the jury's presence--that the jury "may

11

well be able to see that there's some restraining going on and I don't think there's any way of avoiding that." *Finch*, 975 P.2d at 1003. On appeal, the Washington court stated measures which single out a defendant as guilty or particularly dangerous threaten the defendant's constitutional right to fair trial. The court ruled that concern that the defendant in that case was "potentially dangerous" was not sufficient to warrant the physical restraints used. It then went on to determine the error was harmless as to the guilt or innocence phase of trial but not as to the penalty phase. *Finch*, 975 P.2d at 1003, 1007-09.

¶30    In the present case, Herrick was not handcuffed and no comments were made on the record drawing attention to his restraint. To the contrary, the District Court took great care to prevent the jury from being aware that Herrick's ankles were shackled, and there is no indication that the jurors or potential jurors were aware of it. Because the facts here are clearly distinguishable from those in *Finch*, the reasoning behind the ruling in that case does not apply. We conclude Herrick has not established that he was denied his right to a fair trial.

¶31    Finally, Herrick contends his right to individual dignity was violated when he was shackled at trial. Article II, Section 4 of the Montana Constitution provides, in part, that "[t]he dignity of the human being is inviolable." We agree with Herrick that this portion of the Montana Constitution is relatively unique.

¶32    In support of his individual dignity argument, Herrick cites to a law review article discussing Montana's right to individual dignity, a concurring opinion by Justice Brennan in *Allen*, and our decision in *Walker v. State*, 2003 MT 134, 316 Mont. 103, 68 P.3d 872. We need address his authorities only briefly.

¶33    With regard to the law review article, it is merely referenced. Not a single portion of the article is advanced which might support Herrick's argument that use of the leg irons violated his right to dignity.

¶34    Similarly, it is true that, in a concurring opinion in *Allen*, Justice Brennan noted that shackling and gagging is the least acceptable method of controlling judicial proceedings, and that doing so "offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law." *Allen*, 397 U.S. at 350-51, 90 S.Ct. at 1064, 25 L.Ed.2d at 363 (J. Brennan, concurring). As addressed above, Herrick was not shackled and gagged. Instead, leg restraints were used in an unobtrusive way which met the strict due process standards adopted herein.

¶35    Finally, Herrick relies on *Walker*. There, we stated that Article II, Section 4 of the Montana Constitution expressly recognizes that all human beings have an innate dignity. *Walker*, ¶ 72. We held that a behavior modification program used in a prison setting violated the Montana Constitution's individual dignity clause. *Walker*, ¶ 84. On the basis of *Walker*, Herrick states--without further analysis--that making him "appear before the jury in leg irons stripped him of his innate dignity before the eyes of the jury." We again observe that nothing of record indicates that jurors or potential jurors saw Herrick's leg restraints at any time. In

13

any event, a conclusory statement of the type advanced by Herrick, without more, falls far short of establishing a constitutional violation. Therefore, we conclude Herrick's right to individual dignity was not violated in the present case.

¶36    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE