DA 06-0294

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 143

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

JOHN MICHAEL MERRILL,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC-05-031
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender; Shannon L. McDonald,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; Ilka Becker
Assistant Attorney General, Helena, Montana

          Cyndee L. Peterson, Hill County Attorney; Gina Bishop, Deputy
County Attorney, Havre, Montana

          Submitted on Briefs:  October 31, 2007

                Decided:  April 25, 2008

Filed:

_____
                      Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      John Michael Merrill (Merrill) appeals from the judgment entered by the Twelfth Judicial District Court, Hill County, on his convictions and sentences for the felony offense of criminal endangerment and three misdemeanor offenses.  We reverse and remand for a new trial.

¶2      Merrill raises the following issues on appeal:

¶3      1.  Did the District Court abuse its discretion in violation of Merrill's right to due process of law by granting a request from a law enforcement officer to restrain Merrill with leg shackles during his jury trial?

¶4      2.  Did the District Court abuse its discretion in denying Merrill's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment?

¶5      3.  Did the District Court err in imposing conditions on Merrill's parole?

¶6      We conclude that Issue 1 is dispositive of this appeal and, consequently, do not address Issues 2 and 3.

**BACKGROUND**

¶7      The State of Montana (State) charged Merrill by information with one felony and eight misdemeanor offenses arising from a traffic stop and subsequent high-speed chase involving Merrill and Montana Highway Patrol, Hill County Sheriff's Department, Havre Police Department and Rocky Boy's Tribal Police officers.  The State subsequently dismissed five of the misdemeanor counts and the case proceeded to a jury trial on the

charges of felony criminal endangerment and misdemeanor driving under the influence of alcohol, eluding a peace officer and resisting arrest.

¶8 On the morning of trial, prior to *voir dire*, the parties met with the District Court in the courtroom to discuss several matters. At the end of the discussion, defense counsel requested that Merrill's leg shackles be removed prior to trial. The District Court observed that the law enforcement officer responsible for escorting Merrill to and from the courtroom had requested that Merrill remain in shackles while in the courtroom and made a record of the officer's reasons. The court determined Merrill would remain shackled during trial.

¶9 The jury convicted Merrill of all four charges. The District Court sentenced Merrill on the convictions and entered judgment. Merrill appeals.

## STANDARD OF REVIEW

¶10 We review a trial court's decision to restrain a criminal defendant during trial to determine whether the court abused its discretion. *State v. Herrick*, 2004 MT 323, ¶ 15, 324 Mont. 76, ¶ 15, 101 P.3d 755, ¶ 15.

## DISCUSSION

¶11 ***Did the District Court abuse its discretion in violation of Merrill's right to due process of law by granting a request from a law enforcement officer to restrain Merrill with leg shackles during his jury trial?***

¶12 The due process clause of the United States Constitution and Article II, Section 17 of the Montana Constitution entitle criminal defendants to appear before a jury free of shackles and other physical restraints. *Herrick*, ¶ 12 (citing *Morgan v. Bunnell*, 24 F.3d 49, 51 (9th Cir. 1994)), and ¶ 15. This right is of constitutional magnitude, but is not

3

absolute. Therefore, a trial court's decision to shackle a defendant during trial is not *per se* unconstitutional. *Herrick*, ¶ 12.

¶13 We recently adopted a two-part test for addressing whether a trial court abused its discretion in ordering that a defendant be shackled during trial. *Herrick*, ¶ 15. The first prong requires that the trial court "must be persuaded by compelling circumstances that some measure is needed to maintain the security of the courtroom . . . ." *Herrick*, ¶ 14. In that regard, the trial court "'has wide discretion to decide whether a defendant who has a propensity for violence poses a security risk and warrants increased security measures.'" *Herrick*, ¶ 15 (quoting *Morgan*, 24 F.3d at 51). The second prong of the test requires a trial court to pursue less restrictive alternatives before imposing physical restraints. *Herrick*, ¶ 14.

¶14 Merrill contends that the District Court abused its discretion in ordering that he remain shackled during trial because the court's decision failed to comply with either prong of the two-part *Herrick* test. We agree that the District Court failed to satisfy the first prong of the *Herrick* test and, because the *Herrick* test is written in the conjunctive, we need not address the second prong.

¶15 In *Herrick*, the prosecution filed a written motion prior to trial requesting the district court to allow additional security measures during trial based on the nature of the charges against the defendant and his conduct while incarcerated after his arrest. The State supported its motion with a brief outlining specific factual allegations justifying the increased security and detailing the security measures it requested. *Herrick*, ¶ 7. The State's factual allegations included that, since his arrest, the defendant had been charged

with two counts of possession of a deadly weapon; he had sent letters to the county attorney and the United States District Attorney for Montana stating that a white powdery substance in the letters was anthrax, as well as another letter threatening the lives of the county attorney and the President of the United States; and he also had been charged with felony intimidation since his arrest based on his communicating a telephone bomb threat to a local attorney. *Herrick*, ¶ 21.

¶16    The defendant did not dispute the State's factual allegations, but did challenge the propriety of most of the requested additional security measures. *Herrick*, ¶ 8. The district court held a hearing on the motion prior to *voir dire* and found, based on the State's undisputed allegations, that the defendant had a propensity to violence and presented a danger to court personnel. *Herrick*, ¶¶ 9 and 21. The court granted the State's motion in part, tailoring the additional security measures to ensure the jury did not observe the defendant in restraints. *Herrick*, ¶ 9. We affirmed on appeal, determining the district court did not abuse its discretion in granting the State's motion because the undisputed facts—as alleged by the State and found by the district court—presented sufficient compelling circumstances to support the court's conclusion that some additional security measures were needed and the court pursued the least restrictive alternatives available by granting only part of the State's requested security measures. *Herrick*, ¶¶ 22-24.

¶17    In the present case, Merrill apparently was brought into the courtroom in leg shackles. The record exchange regarding the shackling occurred as follows:

5

[DEFENSE COUNSEL]: Your Honor, there is one matter. Would it be possible to remove Mr. Merrill's shackles?

THE COURT: No, I will not. Let me get it on the record. Officer Nugent, you had indicated that you felt that leaving the shackles on Mr. Merrill is appropriate. What is your reason for that?

OFFICER NUGENT: Just because in his past history he's had some difficulties with law enforcement, Your Honor.

THE COURT: And he's presently in custody of the Department of Human Services, correct?

OFFICER NUGENT: I believe so, yes.

THE COURT: He's a jail inmate pending this trial, but upon any kind of a conclusion of this matter, he would be returned to the State for custody?

OFFICER NUGENT: I believe so.

THE COURT: So he's in custody . . . . I do this just as a matter of caution. That's why he is here and the jury is downstairs. Nobody will see his shackles. The procedure would be that the jury would go out of the front, before they are chosen. If he needs to go to the—at the point when the jury is chose they—when they are gone, you can go out and use the bathroom. If you decide to testify, you will come on and testify. So the way the courtroom is set up nobody should see the shackles. That's the best I can do. I honor the officer's thoughts here and with the facts, I'm going to require that the shackles stay on the legs.

[DEFENSE COUNSEL]: I just wanted to express an objection. I do believe that it's possible, if Mr. Merrill is moving around that, even if it's involuntarily to adjust himself, or to be comfortable that someone in the jury box on this end may see it.

THE COURT: I understand.

[DEFENSE COUNSEL]: And I believe it was in his last trial, down in Justice Court, that he was not shackled.

THE COURT: All right. Well, he will be shackled here and we would—obviously, Mr. Merrill, try to keep any jingling from happening, but I don't think it's going to be that big of deal [sic] to the jury. I think we have taken

6

pretty good precautions here to make sure restraints are not visible, or not obvious.

¶18 As the exchange indicates, the initial request to keep Merrill shackled while in the courtroom was not made by the prosecutor. The request to the District Court was made by the law enforcement officer in charge of escorting Merrill to and from the courtroom. In addition, the request had been made off the record and, apparently, outside the presence of the parties. The only reasons provided by the officer to support his request on the record were that Merrill had prior "difficulties with law enforcement" and, at the trial court's prompting, that Merrill not only was incarcerated in the jail on the current charges, but also was in the custody of another State agency as the result of another proceeding. The officer did not provide, and the District Court did not request, specific facts to support the officer's request. The prosecutor did not participate at all in the exchange regarding Merrill's shackling.

¶19 As stated above, before a trial court may order that a criminal defendant be restrained during trial, the court "must be persuaded by compelling circumstances that some measure is needed to maintain the security of the courtroom . . . ." *Herrick*, ¶ 14. In *Herrick*, the State filed a pretrial motion for security measures during trial and supported its request with specific factual allegations detailing the defendant's violent and threatening behaviors. *Herrick*, ¶ 7.

¶20 Here, the decision to shackle had been made off the record and out of the parties' presence. Moreover, the limited information presented to the District Court simply did not establish "compelling circumstances" for security measures. The officer's cursory

7

statement that Merrill previously had "difficulties with law enforcement" provides no basis on which the District Court could determine Merrill had a propensity toward violence, had ever been violent or otherwise posed a security risk. Indeed, the phrase "difficulties with law enforcement" could mean mere prior arrests for non-violent misdemeanor offenses or even contacts with law enforcement not resulting in arrest. Similarly, the fact that Merrill was in the custody of a State agency as a result of a separate proceeding, without more, cannot constitute a compelling circumstance that some security measure in the courtroom is needed.

¶21　The State does not contend that the District Court's decision comported with the *Herrick* test. It does remind us—and properly so—that, in *Herrick,* we vested broad discretion in trial courts deciding whether a defendant with a propensity for violence poses a security risk warranting increased security measures. *See Herrick*, ¶ 15. As *Herrick* states, however, an exercise of the court's discretion must begin with "a defendant who has a propensity for violence." Even that initial basis for exercising broad discretion is highly questionable here. Moreover, the ultimate decision must be based on the factual information of record establishing compelling circumstances which persuade the court that some measure is needed to maintain the security of the courtroom. That factual information of record is simply absent here. Thus, we conclude the District Court failed to comply with the first prong of the *Herrick* test and, as a result, abused its discretion in ordering that Merrill remain shackled for his trial.

¶22　We observe that the State frames this issue as whether the District Court "abuse[d] its discretion in denying Merrill's request to remove his leg shackles during trial." The

State then asserts that the court did not abuse its discretion and notes that, although the court's decision to shackle Merrill during trial "is not supported by an in-depth, on-the-record analysis," Merrill failed to request either the District Court or the State to provide any further reasoning or analysis. This argument is totally without merit.

¶23 As stated above, the due process clauses of the United States and Montana Constitutions entitled Merrill to appear before the jury free of shackles or other physical restraints. This right exists unless and until compelling circumstances persuade a trial court that some added measure is necessary to maintain the security of the courtroom; even then, a court must pursue less restrictive alternatives before imposing physical restraints. A defendant has no obligation to prove the constitutional entitlement to be unrestrained for trial; nor is it conceivable that a defendant is obligated to request the State to come forward with additional argument and analysis to support his being shackled.

¶24 The State also contends that other information contained in the record and known to the District Court—such as the factual allegations underlying the current charges as set forth in the affidavit in support of its motion for leave to file an information, as well as Merrill's criminal history—supported a determination that Merrill was both dangerous and an escape risk, thus justifying the court's decision to keep Merrill shackled during trial. This argument, too, is totally without merit.

¶25 The factual allegations underlying the charges on which Merrill was about to be tried were simply that—unproven allegations of criminal behavior of which Merrill was presumed innocent. In addition, nothing of record establishes—or even suggests—that

9

Merrill's criminal history was brought to the District Court's attention before or during the limited exchange regarding shackling Merrill for trial. The constitutional right to be free from restraints during trial cannot co-exist with allowing infringement of that right based on unproven allegations or pure speculation.

¶26 We hold that the District Court abused its discretion in violation of Merrill's right to due process of law by granting a request from a law enforcement officer to restrain Merrill with leg shackles during his jury trial.

¶27 Reversed and remanded for a new trial.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Justice Jim Rice dissenting.

¶28 I dissent from the Court's reversal of Merrill's conviction and order for a new trial.

¶29 In *Herrick*, upon which the Court exclusively relies, we first noted the principle offered by Herrick that "shackling, when observed by the jury, is inherently prejudicial," but concluded, in rejecting Herrick's due process argument, that the case presented "no

indication of any impact on the presumption of innocence" because efforts had been taken to ensure "the restraints were not visible to the jury. Nothing of record shows or even suggests . . . that jurors or potential jurors saw the shackles." *Herrick*, ¶¶ 18-19. We likewise rejected Herrick's individual dignity argument, noting "[w]e again observe that nothing of record indicates that jurors or potential jurors saw Herrick's leg restraints at any time." *Herrick*, ¶ 35.

¶30 These facts, heavily emphasized in *Herrick*, are overlooked today. But as in *Herrick*, there is nothing of record in this case which indicates that the jury saw Merrill's shackles. Merrill did not argue that the jury saw him in shackles in his opening brief and, in his reply brief, argued that the jury "may" have seen him in shackles. Thus, the record does not permit an "indication of any impact on the presumption of innocence." *Herrick*, ¶ 19. Similar to this emphasis in *Herrick*, many other courts have likewise held that "[a]n appellate court will not find error on the ground that the defendant was shackled unless it is shown that the jury saw the shackles." *State v. McMurtrey*, 664 P.2d 637, 642 (Ariz. 1983) (citing cases).

¶31 On this basis—that the record is insufficient to factually support Merrill's claim—I would affirm.

/S/ JIM RICE

11