DA 10-0160

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 188

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JOHN L. HARTSOE,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 08-110
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joseph P. Howard, Attorney at Law, Great Falls, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; Sheri K. Sprigg, Assistant
Attorney General, Helena, Montana

            Mitch Young, Lake County Attorney, Polson, Montana

Submitted on Briefs:  March 23, 2011
Decided:  August 5, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     A jury in the Twentieth Judicial District Court, Lake County, convicted John L. Hartsoe (Hartsoe) of aggravated assault, a felony, and violation of an order of protection, a misdemeanor.  Hartsoe appeals and raises the following issues, which we have restated:

¶2     Issue One:  Whether the District Court abused its discretion and violated Hartsoe's right to due process by permitting Hartsoe to be shackled in a chair and brought into the courtroom during voir dire.

¶3     Issue Two:  Whether the District Court violated Hartsoe's right to individual dignity by permitting Hartsoe to be shackled in a chair and brought into the courtroom during voir dire.

¶4     Issue Three:  Whether the District Court erred in granting Hartsoe's request to represent himself.

¶5     Issue Four:  Whether the District Court erred in holding Hartsoe in contempt and failed to comply with statutory and due process requirements.

¶6     We affirm in part and remand in part for further proceedings consistent with this Opinion.

## BACKGROUND

¶7     In July 2008, the State charged Hartsoe by Information with Count I: aggravated assault, a felony; Count II: assault with a weapon, a felony; and, Count III: kidnapping, a felony.  The State later amended the Information to include Count IV: violation of a protection order, a misdemeanor.  The charges stemmed from an incident involving Hartsoe

2

and his wife Donna. The State alleged that Hartsoe, while Donna had an order of protection in place against him, had laid in wait for Donna at their home, attacked her, and then held her hostage in the home. Hartsoe denied being the aggressor and asserted that he had acted in self-defense.

¶8 Initially, Hartsoe retained private defense counsel. Hartsoe fired private counsel less than one week before his first trial date, alleging ineffective assistance. Counsel immediately moved to withdraw, and a hearing was held on the motion. At the hearing, the District Court warned Hartsoe that there were "numerous dangers and disadvantages to representing [himself]":

> [I]t's an extremely bad idea to have you represent yourself. There's just huge – unless you have the background in how to handle a courtroom, how to voir dire a jury and question them and choose and pick a jury and proceed under the rules of evidence. And I can't change the rules to make them less onerous on you than I do on the State.

Hartsoe insisted that he could not proceed with private counsel:

> [Hartsoe]: At this point I cannot proceed with [private counsel].
>
> The Court: All right. And even recognizing that that may mean that you would have to represent yourself.
>
> [Hartsoe]: Even recognizing everything that you've explained to me.

The District Court granted private counsel's motion to withdraw, continued the trial, and conditionally appointed the Office of the State Public Defender (OPD) to represent Hartsoe, pending the OPD's determination that Hartsoe was eligible for its services.

3

¶9     One week later, Hartsoe filed an affidavit denying his corporate existence.[1]  At a subsequent hearing, the District Court explained to Hartsoe, who appeared with OPD counsel, that he could not file any papers except through his attorney (who refused to file the affidavit):

> I must work through your attorney . . . .  And you and I agreed that you were not in a position to represent yourself and that you recognize the dangers and disadvantages of representing yourself . . . .  So you continue to have the obligation . . . to work through your attorney with regard to this [District] Court unless you choose to represent yourself, at which point . . . you're obligated to follow all the rules of court.
>
> .   .   .
>
> I'm saying that the only way that I can look at anything that is filed by you is if you follow all the rules of court, which include all the rules of criminal procedure, all the rules of evidence and all of the information that the attorneys spend years of learning how to do.
>
> So I would highly recommend that you not represent yourself, however I cannot tell you that you don't have the right to do so.  If you choose to do so, though, then the [District] Court has to hold you to all of those rules as passed by the state government . . . .

Hartsoe requested time to make his decision.  The District Court requested that OPD counsel advise Hartsoe of the dangers associated with proceeding pro se before Hartsoe made his decision.

¶10    Within days, Hartsoe filed a request to represent himself.  At a hearing on the request, Hartsoe's OPD counsel appeared with Hartsoe and informed the District Court that Hartsoe was not eligible for OPD services.  The District Court relieved OPD counsel of his

---

[1] Hartsoe's affidavit was based upon his belief that the United States is a corporation, which created "straw men," fictitious persons separate from real individuals, for each man and woman in order to control the people of the United States.  Hartsoe refused to submit to the corporate government and filed his affidavit denying his "straw man" or corporate existence.

appointment. The District Court advised Hartsoe that it "continue[d] to have significant concerns about [him] representing [him]self." Hartsoe responded that he intended to proceed pro se. The District Court emphasized what a "poor decision" Hartsoe was making and explained some of the disadvantages Hartsoe would face:

> [Y]ou face certain dangers and disadvantages which include not knowing the complexities of the jury selection, what constitutes an admissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross-examination, what witnesses, what motions you need to make and when you need to make them during a trial to prevent you to make them post-trial motions and to protect your rights for an appeal. Nor do you have any training . . . with regard to what constitutes an appropriate closing argument to the jury, what the applicable rules of evidence are and what appropriate jury instructions may be.

Hartsoe responded that he wanted to represent himself.

¶11 Hartsoe proceeded to trial pro se on November 9, 2009. On the morning of the first day of trial, Hartsoe, who was present in the courtroom with the venire, attempted to file with the District Court another copy of the affidavit denying his corporate existence and silently refused to take his seat at counsel table. The District Court informed him:

> Sir, if you'd like to take a seat I will require the attorney to file this document for you. But you need to be present here at counsel table. You continue to have a right to remain silent but you need to be present at counsel table so that we can proceed with this matter and then you can involve yourself to the degree and to your desires as we go through this process. But today is the day for your jury trial which you have requested, and the [District] Court is requiring that you take a seat at counsel table.

¶12 Hartsoe refused to take his seat. The District Court continued:

> Let the record reflect the [District] Court is holding Mr. Hartsoe at this time in contempt, sir. If you wish to take a seat you may. If you do not take a seat then what I'm going to do is require you be placed in a holding cell downstairs

5

that has a video that we will conduct the trial under those circumstances. You continue to have a right to take your place at counsel table. If you do not do so, sir, what the [District] Court's going to do is I'm going to take a 15-minute recess.

The District Court instructed the venire to wait for it to proceed and informed Hartsoe as follows:

At this point, though, Mr. Hartsoe, I am requiring the sheriff's office to place you under arrest and to take you downstairs to the holding cell. At the point that you wish to join us then I request that you be returned to the courtroom to participate in your trial to the degree you choose to do so.

¶13 Law enforcement removed Hartsoe from the courtroom. The District Court instructed the venire that it was taking a fifteen minute recess and gave the venire the option of staying in the courtroom. The District Court stated, "I apologize for this experience. We'll see how this proceeds."

¶14 After the recess, the record reveals that "[Hartsoe] returned shackled in chair." The record is silent regarding why Hartsoe was returned to the courtroom shackled in a chair or who made the decision to shackle him. The District Court went on the record, noting the parties were present. The clerk conducted the roll call of the jury. After roll call, the District Court addressed the venire regarding the morning's occurrences:

Ladies and gentlemen, I apologize to you for some of the upset this morning and I'm saddened for Mr. Hartsoe to a large degree. He has not been comfortable with the process with regard to the court proceedings and he does not wish to be present in this manner. He certainly has a right to the feelings that he has, to the philosophies that he may feel, and I continue to invite him to participate in this matter.

I want to be very direct with you and make you very aware that under the constitution he has a right to remain silent, he has a right to expect the State

6

and to require that the State be held to prove anything that they have against him beyond a reasonable doubt and that there is the presumption of innocence in this matter. So regardless of anything that has gone on this morning, that has nothing to do with the charges that the State has brought in this matter and especially in this case want you to be very aware of holding the State to any burden that they have and to be very aware of applying the presumption of innocence. It cloaks him from now until and unless there's a determination made by the 12 of you that he is in fact guilty beyond a reasonable doubt.

So you will hear a lot more about this process, but my concern and my interest is in making sure that none of what happened this morning or may go on with regard to his frustration with the system is ever applied against him in any way, shape or form. So as members of our society I'm going to ask that you be very, very serious about the rights that make us Americans.

¶15 The State conducted its voir dire, while Hartsoe remained shackled in the chair. The Court then instructed Hartsoe that he could proceed with voir dire if he wished. Hartsoe stated, "Yes, I do. And since I'm being held here against my beliefs, and stuff, and have to participate in this, I will. And I would request you release me from this chair." The Court recessed in order to "give Mr. Hartsoe a chance to get out of that contraption" and appointed standby counsel to provide Hartsoe legal support.[2]

¶16 Hartsoe proceeded with his voir dire, apologizing to the venire for the events that had transpired earlier: "At this point I'll apologize to you all for what happened at the beginning of the trial. I have my beliefs in the system and I went on them, and I hope at this point that doesn't influence any of you in the outcome of this trial." Hartsoe remained free of restraints for the remainder of the trial.

---

[2] Standby counsel made several requests to end the trial in order for Hartsoe to find counsel; however, Hartsoe never made the requests personally and standby counsel never asserted that Hartsoe had instructed him to make the requests.

¶17 Hartsoe was taken into custody at the conclusion of the first day of trial and remained incarcerated for the duration of his trial. Standby counsel made several requests that the District Court release Hartsoe from contempt and allow him to return home. The District Court denied the requests due to concerns that Hartsoe would not appear for trial and that his release would jeopardize the safety of all parties involved in the case.

¶18 The jury convicted Hartsoe of Count I: aggravated assault and Count IV: violation of a protection order and acquitted Hartsoe of Count II: assault with a weapon and Count III: kidnapping. The District Court sentenced Hartsoe to twenty years at the Montana State Prison on Count I and, on Count IV, to six months in jail, with all but sixty days suspended, to run concurrently with the sentence imposed on Count I. Hartsoe received credit for the time he had served in jail and was released from contempt.

**STANDARDS OF REVIEW**

¶19 We review a district court's decision to restrain a criminal defendant during trial for an abuse of discretion. *State v. Herrick*, 2004 MT 323, ¶ 15, 324 Mont. 76, 101 P.3d 755.

¶20 "District court judges are in the best position to determine whether the defendant has made a knowing and intelligent waiver of his [or her] right to counsel." *State v. Colt*, 255 Mont. 399, 406, 843 P.2d 747, 751 (1992). This Court will not disturb a district court's grant of a request for self-representation so long as substantial credible evidence exists to support a determination that the defendant acted voluntarily, knowingly, and intelligently in waiving his or her right to counsel. *Halley v. State*, 2008 MT 193, ¶ 20, 344 Mont. 37, 186 P.3d 859.

**DISCUSSION**

8

¶21    *Issue One:  Whether the District Court abused its discretion and violated Hartsoe's right to due process by permitting Hartsoe to be shackled in a chair and brought into the courtroom during voir dire.*

¶22    The due process clauses of the United States Constitution and Montana Constitution entitle criminal defendants to appear before a jury free from physical restraints.  This right is not absolute, and a district court's decision to restrain a defendant during trial is not unconstitutional per se.  *State v. Merrill*, 2008 MT 143, ¶ 12, 343 Mont. 130, 183 P.3d 56.  However, a district court's decision to restrain a defendant without first engaging in the two-step process we adopted in *State v. Herrick* constitutes a denial of due process.  *Herrick*, ¶¶ 14-15; *see also Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995).  Under the *Herrick* test, which this Court adopted from the Ninth Circuit Court of Appeals, a district court abuses its discretion in restraining a defendant during trial unless:  (1) the court is persuaded by compelling circumstances that some measure is needed to maintain the security of the courtroom, and (2) the court pursues less restrictive alternatives before imposing physical restraints.  *Herrick*, ¶¶ 14-15 (citing *Morgan v. Bunnell*, 24 F.3d 49, 51 (9th Cir. 1994)).

¶23    Ensuring the security of the courtroom constitutes a compelling circumstance under the first prong of *Herrick*.  *Id*. at ¶¶ 21-22; *Merrill*, ¶ 13.  This Court has emphasized that a district court's decision that compelling circumstances exist "must be based on the factual information of record. . . ."  *Merrill*, ¶ 21.  For example, in *Merrill*, the district court imposed restraints based upon a law enforcement officer's statement, on the record, that he had security concerns.  We concluded the officer's statement was factually insufficient and did

9

not create compelling circumstances to support the district court's decision to shackle. *Id.* at ¶¶ 20-21.

¶24 Here, the State concedes that ensuring the security of the courtroom was not the compelling interest, but urges us to recognize that the District Court's desire to maintain courtroom decorum is a sufficient compelling circumstance to satisfy the first prong of *Herrick*. Although we have not faced this question before, other jurisdictions, including the Ninth Circuit, have acknowledged that maintaining courtroom decorum constitutes a compelling circumstance that may overcome a defendant's right to remain free from restraints. *See Deck v. Missouri*, 544 U.S. 622, 628, 125 S. Ct. 2007, 2012 (2005) (the right to remain free of physical restraints "may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum"); *Duckett*, 67 F.3d at 749 ("In all cases in which shackling has been approved, there has also been evidence of disruptive courtroom behavior . . . or a pattern of defiant behavior toward corrections officials and judicial authorities.").

¶25 Courts must act to guard against defendants who act disruptively in order to prevent or postpone their trials and degrade the judicial system. *Illinois v. Allen*, 397 U.S. 337, 345-46, 90 S. Ct. 1057, 1061-62 (1970); *Estelle v. Williams*, 425 U.S. 501, 505, 96 S. Ct. 1691, 1693 n. 2 (1976) ("The contumacious defendant brings his plight upon himself and presents the court with a limited range of alternatives. Obviously, a defendant cannot be allowed to abort a trial and frustrate the process of justice by his own acts."). Therefore, we recognize

that maintaining courtroom decorum constitutes a compelling circumstance under the first prong of our *Herrick* test.

¶26 The question remains whether sufficient record-based facts existed, which established compelling circumstances in this case. *Merrill*, ¶ 21. Here, Hartsoe refused to take his place at counsel table or otherwise participate in the proceedings, notwithstanding the District Court's direction that he do so. The District Court was faced with a courtroom of prospective jurors and a defiant defendant. Additional measures were necessary in order for the District Court to maintain the decorum of the courtroom and ensure the conduct of the trial. We conclude the first prong of *Herrick* is satisfied here.

¶27 Courts have recognized that, generally, shackles should be used as a last resort. *Allen*, 397 U.S. at 344, 90 S. Ct. at 1061 ("[N]o person should be tried while shackled . . . except as a last resort."); *Castillo v. Stainer*, 983 F.2d 145, 147 (9th Cir. 1992) (*Castillo I*), *amended*, 997 F.2d 669 (9th Cir. 1993) (*Castillo II*) ("[S]hackling may be used only as a last resort.") (internal quotations omitted); *Deck*, 544 U.S. at 628, 125 S. Ct. at 2011; *Duckett*, 67 F.3d at 748 ("Because of the potential for prejudice, however, due process requires that shackles be used only as a last resort.") (internal quotations omitted). Accordingly, the second prong of *Herrick* requires a district court to pursue less restrictive alternatives before imposing physical restraints. *Herrick*, ¶ 23.

¶28 In assessing less restrictive alternatives, the district court must begin by analyzing the harm associated with the use of shackles, including shackles' potential to (1) cause physical pain; (2) undermine the presumption of innocence and affect the venire's impartiality in the

11

fact-finding process; (3) inhibit the defendant's ability to communicate with his or her attorney; and/or (4) affront the dignity of the court. *Castillo I*, 983 F.2d at 147. After considering these factors, the district court must weigh the benefits and burdens associated with shackling against other possible alternatives. *Id.* at 147-48. The second prong of *Herrick* is met only when the record demonstrates the district court considered less restrictive alternatives before imposing shackles as a last resort. *Herrick*, ¶ 23.

¶29 Here, the record does not establish whether shackling Hartsoe and strapping him to a chair was utilized only as a last resort. After the District Court directed law enforcement officers to take Hartsoe to a holding cell, law enforcement inexplicably returned Hartsoe to the courtroom, shackled to a chair, and displayed him to the venire. There is no record that the District Court assessed the harms associated with the use of shackles, pursued less restrictive alternatives before physically restraining Hartsoe, or made any effort to conceal Hartsoe's shackles from the jury in order to limit the prejudice and harm associated with their use. Therefore, in the absence of a record demonstrating that the District Court shackled Hartsoe as a last resort, the District Court violated the second prong of *Herrick* and Hartsoe's due process rights.

¶30 Previously, this Court has automatically reversed a defendant's conviction after concluding the district court violated a *Herrick* prong. *See Merrill*, ¶¶ 14, 21-27. In doing so, we split from not only this Court's long-standing recognition that a constitutional violation which is not "structural" in nature should be evaluated for harmlessness, *State v. Matt*, 2008 MT 444, ¶ 34, 347 Mont. 530, 199 P.3d 244, *overruled on other grounds, State v.*

12

*Charlie*, 2010 MT 195, ¶ 45, 357 Mont. 355, 239 P.3d 934, but also the Ninth Circuit test upon which our *Herrick* test is based. Under the Ninth Circuit test, "[s]hackling, except in extreme forms, is susceptible to harmless error analysis." *Duckett*, 67 F.3d at 749. We find no justification for our split in *Merrill* from the Ninth Circuit test, nor can we justify exempting this sort of constitutional error from harmless error analysis. Therefore, we take this opportunity to modify our *Herrick* test to allow for harmless error analysis.

¶31    Once it has been established that either prong of *Herrick* has been violated, the first question is whether the error is structural. *Matt*, ¶ 35. A structural error is one "which so infect[s] and contaminate[s] the framework of the trial as to render it fundamentally unfair, requiring automatic reversal." *Charlie*, ¶ 40. In the context of shackling, structural error occurs where the impact of the shackling upon the defendant or the defense is so pervasive that the error is not susceptible to analysis under harmless error standards. *Duckett*, 67 F.3d at 749; *Castillo I*, 983 F.2d at 148-49; *Castillo II*, 997 F.2d 669 (noting the jury had not viewed the defendant's waist chain, but "had [Castillo] been bound and gagged . . . the impact upon him and his defense would be so pervasive that the error in permitting such a practice would not be susceptible of harmless error analysis").

¶32    Second, if the violation is not structural, the State must demonstrate that there is no reasonable possibility that the violation prejudiced the defendant. In other words, the State has the burden of persuading the court that the violation was harmless in light of the interests that the right to remain free of physical restraints was designed to protect. *Charlie*, ¶ 45. Visible shackling at trial creates a high risk of prejudice "because it indicates that the court

13

believes there is a 'need to separate the defendant from the community at large, creating an inherent danger that [the] jury may form the impression that the defendant is dangerous or untrustworthy.' " *Dyas v. Poole*, 317 F.3d 934, 937 (9th Cir. 2002) (quoting *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999)). In addition, a defendant may suffer prejudice by shackles' potential to cause the defendant pain, undermine the presumption that the defendant is innocent, inhibit the defendant's ability to communicate with counsel, and affront the dignity of the courtroom. *Castillo I*, 983 F.2d at 147-49 (error was harmless where the jury never saw the restraints, thus, the presumption of innocence was not implicated, and the defendant did not demonstrate the restraints caused him pain or affected his ability to communicate with counsel); *Rhoden*, 172 F.3d at 637 ("Because at least some of the jurors saw the shackles and because the shackles essentially branded Rhoden as having a violent nature in a case where his propensity for violence was the crucial issue, the shackles . . . did *not* constitute harmless error.") (emphasis added).

¶33 Our review of the record leaves us convinced that the error committed here was not structural error. The impact of the error upon Hartsoe and his defense was not so pervasive as to render it not susceptible to harmless error analysis. Hartsoe was shackled for only a portion of voir dire before the District Court ordered his release to allow Hartsoe to conduct his voir dire. Hartsoe remained free from shackles for the remainder of his trial. Thus, his ability to conduct his defense was not inhibited. Further, the District Court and Hartsoe both indicated to the jury that the shackling was due to Hartsoe's set of "unique beliefs," which

14

caused Hartsoe to refuse to submit to the District Court's jurisdiction, as opposed to Hartsoe's violent nature or guilt.

¶34 Because the error committed here is not structural in nature, we must proceed to analyze whether the error is harmless. However, the record is not adequately developed to enable us to conduct this analysis. Where the record is insufficiently developed to enable the court to conduct a harmless error analysis, the Ninth Circuit has remanded the matter for an evidentiary hearing regarding whether the constitutional error was harmless. *See Duckett*, 67 F.3d at 747; *Rhoden v. Rowland*, 10 F.3d 1457, 1462 (9th Cir. 1993), *amended*, 172 F.3d 633 (9th Cir. 1999). We find this approach appropriate here. Therefore, we remand this matter to the District Court to determine whether the violation was harmless in light of the interests that the right to remain free of physical restraints was designed to protect.

¶35 *Issue Two: Whether the District Court violated Hartsoe's right to individual dignity by permitting Hartsoe to be shackled in a chair and brought into the courtroom during voir dire.*

¶36 Because we are remanding Issue One to the District Court, we decline to address this second, related issue.

¶37 *Issue Three: Whether the District Court erred in granting Hartsoe's request to represent himself.*

¶38 Article II, Section 24 of the Montana Constitution and the Sixth Amendment of the United States Constitution guarantee criminal defendants the right to effective assistance of counsel. *Halley*, ¶ 15. Defendants also have the constitutional right to appear pro se. *Id.* at

15

¶ 20. Because proceeding pro se may result in the loss of many of the benefits associated with proceeding with counsel, the district court must ensure that a defendant is competent to abandon his or her right to counsel and proceed pro se. *Colt*, 255 Mont. at 403, 843 P.2d at 749 (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975)).

¶39 The competence requirement does not require that the defendant possess the skill and experience of a lawyer, but it does require that he or she voluntarily, knowingly, and intelligently relinquish his or her right to counsel. *Id.* at 403-04, 843 P.2d at 749-50. A district court need not specifically discuss the dangers and disadvantages of self-representation, but the accused must " 'be made aware of the dangers and disadvantages of self representation[,] [so that the record will establish that he knows what he is doing and his choice is made with eyes open].' " *Id.* at 407, 843 P.2d at 751 (quoting *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (internal quotations omitted)); *State v. Insua*, 2004 MT 14, ¶ 19, 319 Mont. 254, 84 P.3d 11.

¶40 Hartsoe argues the District Court failed to adequately inquire as to whether he voluntarily, knowingly, and intelligently waived his right to counsel and did not examine the circumstances surrounding his waiver. The record, however, is replete with substantial evidence that Hartsoe voluntarily, knowingly, and intelligently waived his right to counsel. On three separate occasions, the District Court discussed with Hartsoe his decision to proceed pro se and specifically cautioned Hartsoe about the pitfalls and obstacles he would face. On the first occasion, Hartsoe chose to proceed pro se rather than to proceed with private counsel. On the second occasion, Hartsoe requested additional time to determine

16

whether to represent himself and asked questions regarding what services standby counsel could provide. At the final hearing, Hartsoe unequivocally indicated that he wanted to proceed pro se.

¶41 Although Hartsoe's decision to represent himself may have been guided by his desire to file his affidavit denying his corporate existence, the decision, although misguided, was made voluntarily, knowingly, and intelligently. Hartsoe's motive for proceeding pro se is separate from whether he voluntarily, knowingly, and intelligently elected to do so. The District Court was only required to evaluate the latter and did not err in honoring Hartsoe's choice.

¶42 *Issue Four: Whether the District Court erred in holding Hartsoe in contempt and failed to comply with statutory and due process requirements.*

¶43 Hartsoe argues the District Court violated § 3-1-511, MCA, and denied him due process when it held him in contempt without first issuing a written order informing him what acts constituted contempt or giving him an opportunity to be heard and defend himself. Hartsoe asserts the District Court compounded its initial error by continuing to incarcerate him throughout trial.

¶44 "Pursuant to § 3-1-523, MCA, contempt of court orders issued by a district court are final and usually unreviewable by this Court except by way of a writ of certiorari or review." *In re Marriage of Boharski*, 257 Mont. 71, 77, 847 P.2d 709, 713 (1993); *In re Marriage of Baer*, 1998 MT 29, ¶ 42, 287 Mont. 322, 954 P.2d 1125; *Schaefer v. Egeland*, 2004 MT 199, ¶ 10, 322 Mont. 274, 95 P.3d 724 ("The judgment of the court in cases of contempt is final

17

and conclusive. . . . Although contempt orders are not appealable, they can be reviewed by way of petition for a writ of certiorari.") (internal quotations omitted). Hartsoe's challenge is not properly before this Court. Therefore, we decline to address this issue.

## CONCLUSION

¶45    The District Court failed to comply with the test set forth in *Herrick*, violating Hartsoe's right to due process. We remand the matter to the District Court and direct the District Court to determine whether the error was harmless in light of the interests that the right to remain free of physical restraints was designed to protect. Hartsoe voluntarily, knowingly, and intelligently relinquished his right to counsel. We do not reach Issue Two and Issue Four.

¶46    Affirmed in part and remanded in part.


                                                    /S/ MICHAEL E WHEAT


We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE




Justice James C. Nelson, concurring.


18

¶47 I concur in the Opinion as to Issues Two, Three, and Four. As to Issue One, I concur with the following observations.

¶48 The last sentence of ¶ 28 and the ensuing discussion at ¶ 29 of the Opinion stand for the proposition that the mere failure of the record to reveal whether the trial judge pursued less restrictive alternatives before imposing physical restraints on the defendant is, itself, a due process violation. Here, it is possible the District Court *did not* consider less restrictive alternatives to shackling Hartsoe, in violation of the second prong of *State v. Herrick*, 2004 MT 323, ¶¶ 14-15, 324 Mont. 76, 101 P.3d 755. But it is also possible the District Court *did* consider such alternatives and found them to be inadequate under the circumstances, yet did not explain this on the record. Regardless, the Court holds that "*in the absence of a record demonstrating that the District Court shackled Hartsoe as a last resort, the District Court violated the second prong of Herrick and Hartsoe's due process rights.*" Opinion, ¶ 29 (emphasis added); *see also* Opinion, ¶ 28 ("The second prong of *Herrick* is met *only when the record demonstrates* the district court considered less restrictive alternatives before imposing shackles as a last resort." (emphasis added)). I am not persuaded that the authorities cited by the Court—*Castillo v. Stainer*, 983 F.2d 145, 147-48 (9th Cir. 1992), and *Herrick*, ¶ 23—actually stand for this proposition. But this approach does have the virtue of providing trial courts and prosecutors with a strong incentive to create a proper record where a defendant has been shackled.

¶49 My second observation concerns the discussion at ¶ 33 of whether the violation was structural error. I agree that the error was not structural, but I reach this conclusion for

19

slightly different reasons. Structural errors infect and contaminate the framework within which the trial proceeds, necessarily render a trial fundamentally unfair, and thus defy analysis by harmless error standards. *State v. Matt*, 2008 MT 444, ¶ 32, 347 Mont. 530, 199 P.3d 244, *overruled on other grounds*, *State v. Charlie*, 2010 MT 195, ¶ 45, 357 Mont. 355, 239 P.3d 934; *see also e.g. Castillo*, 983 F.2d at 149, *as amended*, 997 F.2d 669 (1993) ("If Castillo had been bound and gagged or forced to wear prison clothes or medicated against his will, the impact upon him and his defense would be so pervasive that the error in permitting such a practice would not be susceptible of harmless error analysis."). Here, the venire was present when Hartsoe refused to take his seat at counsel table. They presumably were cognizant of the reason why Hartsoe was returned to the courtroom shackled to the chair during the State's voir dire, after which he agreed to participate in the proceedings and was released from the chair. In these circumstances, I do not believe the due process violation so contaminated the framework of the trial as to preclude analysis under harmless error standards. I do agree with the Court, however, that the question remains whether the violation was harmless in light of the interests that the right to remain free of physical restraints was designed to protect—a question on which the State has the burden of persuasion. Opinion, ¶¶ 32, 34.

¶50 With the foregoing observations, I concur.


/S/ JAMES C. NELSON


Justice Beth Baker joins the Concurrence of Justice James C. Nelson.

20

/S/ BETH BAKER